UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――――――
SKULL VALLEY BAND OF GOSHUTE
INDIANS OF UTAH, ET AL.,
                              Plaintiffs,           20-CV-1704 (JPO)

               -v-                                  OPINION AND ORDER

U.S. BANK NATIONAL
ASSOCIATION,
                              Defendant.
―――――――――――――――――――――――――――――――

J. PAUL OETKEN, District Judge:

Plaintiffs Skull Valley Band of Goshute Indians of Utah, a federal recognized Native American tribe, and sixteen limited liability companies owned solely by the tribe, bring this action against Defendant U.S. Bank National Association ("U.S. Bank") for breach of contract. After Defendant removed this case to federal court (Dkt. No. 1), Plaintiffs filed a motion to remand the case to state court (Dkt. No. 26). For the reasons that follow, Plaintiffs' motion is granted.

**I.   Background**

The following facts are taken from the complaint and presumed true for the purposes of this motion.

The Skull Valley Band of Goshutes is a federally recognized Native American tribe and the sole member and owner of the numerous LLC plaintiffs in the case (collectively, "the Tribe"). (Dkt. No. 1-1 ("Compl.") ¶ 7.) The LLC plaintiffs are all domiciled in the Skull Valley Band of Goshutes Indians' Reservation. (*Id.*) The Tribe owns a number of residual securities in trusts for which U.S. Bank is trustee. (Compl. ¶¶ 7–8.) The trusts are Government National

Mortgage Association ("Ginnie Mae") Guaranteed Grantor Trust Pass-Through Securities. (Compl. ¶ 13.)

The trusts are governed by separate trust agreements, which incorporate standard trust provisions and a glossary. (Compl. ¶ 15.) The agreements distinguish between holders of "regular securities" and "residual securities," the latter of which are owned entirely by the Tribe for the trusts at issue. (Compl. ¶ 16.) Regular security holders' interests are guaranteed by Ginnie Mae, while residual security holders' payments are not. (Compl. ¶ 18.) The Tribe alleges that U.S. Bank effected impermissible, self-serving "clean up calls" when it terminated multiple trusts in which the Tribe held residual securities, keeping the excess value — over $50 million — for itself. (Compl. ¶ 27.)

The Tribe filed suit in New York state court on January 28, 2020, asserting only a breach of contract claim. (*See* Compl.) On February 26, 2020, U.S. Bank filed a Notice of Removal seeking to remove this action to federal court under 28 U.S.C. § 1331. (*See* Dkt. No. 1. ("Not. of Rem.").) This case should be heard in federal court, U.S. Bank argues, because the trust agreements state they are "GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH" federal law and Ginnie Mae's guarantor and third-party beneficiary status gives the United States a substantial interest, raising a sufficient question of federal law under 28 U.S.C. § 1331. (Not. of Rem. ¶¶ 12–14.)

The Tribe now seeks remand. (*See* Dkt. No. 26.)

**II.     Legal Standard**

A federal district court must remand a case that has been removed from state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." *Prop. Clerk v. Fyfe*, 197 F. Supp. 2d 39, 40–41 (S.D.N.Y. 2002) (quoting 28

U.S.C. § 1447(c)).  And a district court has subject-matter jurisdiction over a removed case "only if the case could have been originally filed in federal court." *Beriguete v. Roosevelt Hosp. Envtl. Servs.*, No. 11 Civ. 3085, 2011 WL 6844529, at *2 (S.D.N.Y. Dec. 29, 2011) (quoting *Hernandez v. Conriv Realty Assocs.*, 116 F.3d 35, 38 (2d Cir. 1997)).

To invoke federal-question jurisdiction under 28 U.S.C. § 1331, a plaintiff must plead "a colorable claim 'arising under' the Constitution or laws of the United States." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006) (citation omitted).  A claim arises under federal law "where a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Empire HealthChoice Assur., Inc. v. McVeigh*, 396 F.3d 136, 140 (2d Cir. 2005) (internal quotation marks omitted) (quoting *Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 25 (2d. Cir. 2000)), *aff'd*, 547 U.S. 677 (2006).

In assessing whether a removing party has carried its burden of showing that the removed case satisfies this jurisdictional requirement, the Court "look[s] only to the jurisdictional facts alleged in the Notice[ ] of Removal" and "resolv[es] any doubts against removability." *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007) (second quoting *Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1045–46 (2d Cir. 1991)).

### III. Discussion

U.S. Bank argues that the Tribe's breach-of-contract claim, despite being brought under state law, implicates federal issues and therefore falls within the Court's subject-matter jurisdiction.  The Supreme Court has acknowledged that "in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).  This "captures the

commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law." *Id*.

The test for whether "[f]ederal jurisdiction over a state law claim will lie" considers whether "a federal issue is (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in a federal court without disrupting the federal-state balance approved by Congress." *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 315 (2d Cir. 2016) (quoting *Gunn v. Minton*, 133 S. Ct 1059, 1065 (2013)). "A state-law claim 'necessarily' raises federal questions where the claim is affirmatively 'premised' on a violation of federal law." *Id*. (quoting *Grable*, 545 U.S. at 314). The Supreme Court has warned that only a "special and small category" of state claims, such as those that concern the actions of a federal agency complying with a federal statute, satisfy this test and trigger federal-question jurisdiction. *McVeigh*, 547 U.S. at 699–700.

Chiefly, U.S. Bank argues the underlying suit raises a substantial federal issue in light of (1) the choice-of-law provision in the trust agreements requiring it be governed and constructed in accordance with U.S. law and (2) Ginnie Mae's role as guarantor and third-party beneficiary.[1] The choice-of-law provision is insufficient to implicate a federal issue. The full provision reads:

> THE TRUST AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE UNITED STATES OF AMERICA. INSOFAR AS THERE MAY BE NO APPLICABLE LAW OF THE UNITED STATES, THE INTERNAL LAWS OF THE STATE OF NEW YORK (WITHOUT GIVING REGARD TO CONFLICT OF LAWS PRINCIPLES)

---

[1] U.S. Bank raises other potential federal issues in its brief, chiefly whether the Skull Valley Band of Goshute Indians of Utah is a "Disqualified Organization" and thus, under the standard terms, unable to hold residual securities. (Dkt. No. 30 at 12–13; Dkt No. 1-2 at 4–5 (referencing 26 U.S.C. § 860E(e)(5)).) While U.S. Bank asserts that this issue will be "front and center in this dispute" (Dkt. No. 30 at 12), the Internal Revenue Code suggests otherwise. The Code definition that covers the Skull Valley Band of Goshute Indians of Utah — "Indian tribal government" — does not appear in the statute listing Disqualified Organizations. 26 U.S.C. §§ 860E(e)(5), 7701(a)(40).

>SHALL BE DEEMED REFLECTIVE OF THE LAWS OF THE UNITED STATES OF AMERICA, INSOFAR AS TO DO SO WOULD NOT FRUSTRATE THE PURPOSES OF ANY PROVISION OF THE TRUST AGREEMENT OR THE TRANSACTIONS GOVERNED THEREBY.

(Dkt. No. 1-4 § 8.07.)  Here, as the Tribe alleges a typical state-law contract claim, there are no applicable "laws of the United States." *See, e.g.*, *Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938).  Rather, as the second sentence of the provision directs, New York contract law applies.  This case turns on the sort of contractual analysis that state courts regularly conduct.  A federal issue this is not.

U.S. Bank's next contention — that Ginnie Mae's status as guarantor and third-party beneficiary gives the federal government an interest in the contract being litigated — fares no better.  In *New York v. Shinnecock Indian Nation*, 686 F.3d 133 (2d Cir. 2012), the Second Circuit held that certain state and local law claims did not "necessarily raise a [] federal issue." *Id*. at 140.  This was so, the Second Circuit reasoned, because if the Shinnecock Indian Nation established that it complied with the state and local laws at issue, the case could be resolved without any discussion of tribal sovereign immunity from suit under federal law or federal preclusion.  *Id*. at 140–41.  Here, should U.S. Bank establish that it complied with the contract, the case would be resolved and have no impact on any of the federal interests U.S. Bank alleges are implicated by Ginnie Mae's presence.

Federal interests are routinely implicated in state-law claims.  This, however, does not automatically confer federal-question jurisdiction.  As the Supreme Court explained, federal jurisdiction should be construed narrowly to "keep state-law actions . . . in state court." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1562, 1573 (2016).  Here, as the Tribe points out, New York state courts have successfully ruled on two cases with similar trust agreement and fact patterns — both involving U.S. Bank — with no indication that Ginnie Mae

5

had any cause for concern. (Dkt. No. 28 at 5 (citing *NMC Residual Ownership LLC v. U.S. Bank N.A.*, 153 A.D.3d 284 (1st Dep't 2017); *Cece & Co. Ltd. v. U.S. Bank N.A.*, 153 A.D.3d 275 (1st Dep't 2017)).) This case is no different.

Fundamentally, district courts in this Circuit require that resolution of cases involve a federal rule of decision to establish jurisdiction under *Grable*. *Qatar v. First Abu Dhabi Bank PJSC*, 432 F.Supp.3d 401, 415 (S.D.N.Y. 2020); *see also PCVST Mezzco 4, LLC v. Wachovia Bank Commercial Mortg. Trust 2007-C30*, No. 14 Civ. 6023, 2015 WL 153048, at *4 (S.D.N.Y. Jan. 12, 2015) (finding no federal jurisdiction because no claim "necessarily stands or falls based on a particular interpretation or application of federal law" (citation omitted)). U.S. Bank has not made such a showing. And, as was the case in *McVeigh*, in which the Supreme Court declined to find federal-question jurisdiction, the Tribe's state-law cause of action was not "triggered . . . by the action of any federal department, agency, or service." 547 U.S. at 700.

Nor are U.S. Bank's other allegations of a federal interest in the case availing. While Ginnie Mae is a guarantor of the trusts at issue, if the Tribe is successful in its claim, Ginnie Mae will bear no damages liability. Moreover, Ginnie Mae's guarantor status does not extend to residual securities. (Compl. ¶ 18.) Additionally, Ginnie Mae's status as a third-party beneficiary to the trust agreements (Dkt. No. 1-3 § 8.05), without more, is insufficient to establish jurisdiction. Such an allegation does not bear on any federal rule of decision or suppose a violation of federal law.

U.S. Bank fails to establish federal jurisdiction.

**IV.   Conclusion**

For the foregoing reasons, the motion for remand filed by Plaintiffs is GRANTED.

The Clerk of Court is directed to close the motion at Docket Number 26, and this case is remanded to New York Supreme Court, New York County, pursuant to 28 U.S.C. § 1447(c).

SO ORDERED.

Dated: December 21, 2020
      New York, New York

_____
J. PAUL OETKEN
United States District Judge